IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| CHARI WARREN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:23-00022-RJC-DSC |
| ) | |
| THE ESTATE OF TIMOTHY JAY ROBERTS, ) | |
| PSA AIRLINES, INC., AND PIEDMONT ) | |
| AIRLINES, INC., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM IN SUPPORT OF DEFENDANT PIEDMONT AIRLINES, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Piedmont Airlines, Inc. ("Piedmont"), by and through its counsel, submits this Memorandum in Support of its Motion to Dismiss Plaintiff Chari Warren's ("Plaintiff") Complaint and "Amendment to the Complaint" (collectively referred to as "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction, 12(b)(4) for insufficient process, 12(b)(5) for insufficient service of process, and 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth herein, all claims against Piedmont should be dismissed with prejudice.

## **INTRODUCTION**

This is Plaintiff's attempt for a second bite at the apple after her lawsuit arising out of the same underlying events and core operative facts was dismissed by this Court on October 19, 2022. *See Warren v. Roberts*, No. 322CV00062RJCDSC, 2022 WL 16796874, (W.D.N.C. June 13, 2022), *report and recommendation adopted sub nom. Warren v. Am. Airlines Grp*., No. 322CV00062RJCDSC, 2022 WL 11141313 (W.D.N.C. Oct. 19, 2022), attached hereto as Exhibits

1 and 2).[1] The current lawsuit, just like Plaintiff's prior lawsuit, arises out of an alleged incident on June 3, 2019, during which Plaintiff alleges that co-Defendant Timothy Jay Roberts ("Roberts"), a pilot of co-Defendant PSA Airlines, Inc. ("PSA Airlines"), sexually assaulted her when he gave her an "unnecessary and unwanted kiss" on her left cheek, and she further alleged their employers' response to the incident was insufficient. Plaintiff's prior lawsuit was brought against Roberts, a named individual defendant in this case, and American Airlines Group, Inc. ("American Airlines Group"), Piedmont's parent company, based on the same incident and core operative facts. Now, Plaintiff attempts to re-litigate the same and similar claims this Court has already decided and dismissed. Just as in her prior case, Plaintiff brings claims of sexual harassment and sex discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title VII") (Count I) and negligent infliction of emotional distress ("NIED") (Count III), as well as new claims for negligent retention and supervision (Count II) and assault (Count IV), which could have been asserted in the prior case, against Piedmont.[2] Each of these claims are barred by the doctrine of *res judicata* (claim preclusion), and, as pled, fail as a matter of law for a host of

---

[1] This Court may take judicial notice of the content of its own files. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.").

[2] The Complaint also notes a battery claim in the introduction but does not include further reference to it or any allegations to support it. (Doc. 1-2 p. 6). To the extent the Complaint also asserts a battery claim against Piedmont, it is subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted as Piedmont is not Robert's employer and there are no allegations in the Complaint that support impose liability on Piedmont for Roberts' actions as a third party. *See Wilson v. Gaston Cnty., NC*, 145 F. Supp. 3d 549, 559 (W.D.N.C. 2015), aff'd, 685 F. App'x 193 (4th Cir. 2017) ("An employer may be liable for a battery committed by its employee if it authorized the tortious behavior, if the act occurred while the employee was acting within the scope of his employment, or if the employer ratified the conduct after the fact.")

separate and independent reasons as set forth herein. Accordingly, Plaintiff's Complaint should be dismissed with prejudice as to Piedmont.

## STATEMENT OF RELEVANT FACTS AS ALLEGED IN PLAINTIFF'S COMPLAINT [3]

At all relevant times to the Complaint, Plaintiff was an airline gate agent for her employer, Piedmont. (Doc. 1-2, pp. 7 ¶ 1, 8 ¶ 13). On June 3, 2019, during her employment with Piedmont, an airline pilot, Timothy Jay Roberts ("Roberts"), for PSA Airlines, Inc., a separate company from Piedmont, kissed her left cheek without her consent and made undisclosed/unidentified sexual remarks to her.[4] (Doc. 1-2, pp. 7, 7 ¶ 4 and 8 ¶ 5). Plaintiff describes this single isolated incident as a sexual assault. (Doc. 1-2, p. 6, 7 ¶ 4, 8 ¶ 6, 10 ¶ 23). On the day in question, Plaintiff believed Roberts smelled like alcohol and allegedly reported her observation to her unidentified supervisor in advance of the incident. (Doc. 1-2, pp. 7 ¶ 4, 8 ¶ 6).

According to Plaintiff, pursuant to Piedmont's workplace policy and Federal Transportation Administration policy, she reported Roberts' conduct to Ernest Taylor (who is only identified by name in the Complaint) and to an unidentified supervisor following the incident with Roberts. (Doc. 1-2, p. 8 ¶¶ 5-7). Plaintiff also filed a police report regarding the incident. (Doc. 1-2, p. 8 ¶ 9).

Plaintiff alleges that "PSA/Piedmont" (which she also refers to collectively despite alleging they are separate companies (Doc. 1-2, p. 7)), failed to investigate her report of the incident

---

[3] Piedmont does not admit any allegations set forth in Plaintiff's Complaint. These allegations are included for the sole purpose of this Motion to Dismiss. Further, Piedmont does not waive any objection to any allegations in Plaintiff's Complaint by summarizing the key allegations herein.

[4] Plaintiff does not describe the substance of any alleged sexual comments by Roberts and does not further mention them.

involving Roberts, that Roberts was not reprimanded, and that Plaintiff had to continue to work with Roberts the next day. (Doc. 1-2, pp. 8 ¶¶ 11-13, 8 ¶ 14).

<u>**LEGAL ARGUMENT**</u>

I. <u>**ALL PLAINTIFF'S CLAIMS ARE SUBJECT TO DISMISSAL PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**</u>

Plaintiff's Complaint is subject to immediate dismissal based on the doctrine of *res judicata*. Additionally*,* all Plaintiff's claims should be dismissed on several independent grounds, set forth per claim below, for failure to state a claim upon which relief can be granted. Thus, Piedmont's Motion to Dismiss should be granted pursuant to Rule 12(b)(6).

A. <u>**Rule 12(B)(6) Standard Of Review.**</u>

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mezu v. Morgan State Univ.*, 367 F. App'x 385, 388 (4th Cir. 2010) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). Thus, to avoid dismissal at the pleading stage, the complaint must contain well-pleaded factual allegations that plausibly give rise to an entitlement to relief. *Id.*

The Supreme Court's decisions in *Twombly* and *Iqbal* emphasize that even under a notice pleading standard, a complaint must contain sufficient evidentiary facts to raise a plausible – as opposed to just possible – inference that the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678-80. In doing so, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555). Additionally, the Complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* The Court is not bound by a plaintiff's legal conclusions as the purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the

Complaint. *Estate Const. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 218 (4th Cir. 1994) (citation omitted); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted).

      **B.**    **Res Judicata Prevents Plaintiff From Re-litigating Issues Previously Raised In And Decided By This Court.**

This action is Plaintiff's second lawsuit arising out of the same alleged "sexual assault" incident involving PSA Airlines pilot Roberts on June 3, 2019 and the alleged shortcomings of her employer and Roberts' employer following the alleged incident (hereinafter "*Warren I*"). *See* Exhibit 1 and 2. Accordingly, this second action is barred by the doctrine of *res judicata*, as known as claim preclusion, and is subject to immediate dismissal.

*Res judicata* serves the dual purposes of protecting litigants from the burden of re-litigating previously decided matters and promoting judicial economy by preventing needless litigation. Specifically, "[u]nder the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that [prior] action." *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (internal citations omitted). "By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, res judicata ... encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Id.* (internal citations omitted). Because both *Warren I* and this current action are federal-question cases, the preclusive effect of the earlier judgment in *Warren I* is controlled by the federal common law as opposed to North Carolina state law. *Chandler v. Forsyth Tech. Cmty. Coll.*, 294 F. Supp. 3d 445, 451 (M.D.N.C.), aff'd, 739 F. App'x 203 (4th Cir. 2018).

For the doctrine of *res judicata* to be applicable, there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits. *Id.* at 354–55. These factors are applied

broadly with an aim to "eliminate vexation and expense to the parties, wasted judicial machinery and the possibility of inconsistent results." *Thomas v. Consolidation Coal Co.*, 380 F.2d 69, 77 (4th Cir. 1967). Each element is met here, and thus this action is barred by *res judicata.*

### i. The Identity Of The Cause Of Action In *Warren I* And This Action Are The Same.

"The determination of whether two suits arise out of the same cause of action does not turn on whether the claims asserted are identical...it turns on whether the suits and the claims asserted therein *arise out of the same transaction or series of transactions or the same core of operative facts.*" *Pueschel*, 369 F.3d at 355 (*quoting In re Varat Enters., Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996)) (emphasis added)). Moreover, "the doctrine of res judicata not only bars claims that were actually litigated in a prior proceeding, but also claims that could have been litigated." *Id.* at 355-56 (citations omitted). Here, there is no question that this action and *Warren I* action *arise out of the same transaction and the same core of operative facts* —namely, the alleged "sexual assault" incident on June 3, 2019, involving Roberts and the companies' alleged response to the same. Most telling is the Complaint in this action and in *Warren I* assert nearly identical factual allegations. (*See* Complaint from *Warren I* attached hereto as Exhibit 3 *cf.* Doc. 2-1 pp. 5-18).

Additionally, this action asserts two identical causes of action as *Warren I* – a Title VII claim and a negligent infliction of emotional distress claim. Plaintiff's negligent supervision, negligent retention, and assault claims (which were not brought in *Warren I*) are not exempt from the application of *res judicata* here.[5] Plaintiff's negligent supervision, negligent retention, and assault claims arise out of the same core facts alleged in *Warren I*, and thus those claims could have been asserted in and should have been adjudicated in *Warren I*. There is no reason why

---

[5] Notably, the First Lawsuit included a claim for "assault on female," which this Court dismissed.

Plaintiff could not have asserted these claim in *Warren I. See e.g. Chandler*, 294 F. Supp. 3d at 453 (finding the second prong of the res judicata analysis established where the plaintiff challenged the legality of these same events in both lawsuits and identified no reason why the claims in the second lawsuit could not have been brought in the earlier action). Further, there are no new allegations related to anything that arose after *Warren I* that would warrant a new and distinct action.

Accordingly, the second element for *res judicata* is met.

### ii. Piedmont Airlines, Inc. And American Airlines Group, Inc., Who Was Named In *Warren I*, Are Parties In Privity.

"The concept of privity requires an alignment of interests and not an exact identity of parties." *Weinberger v. ASCII Group, Inc.*, 510 F.3d 486, 492 (4th Cir. 2007). While Piedmont was not explicitly named in *Warren I*, it is in privity with American Airlines Group, which was named. Privity between parties can be established if the new party is "so identified in interest with a party [from the previous] litigation that [it] represents precisely the same legal right in respect to the subject matter involved." *Jones v. SEC*, 115 F.3d 1173, 1180 (4th Cir. 1997) (internal quotation marks omitted). "The concept of privity requires an alignment of interests and not an exact identity of parties," and thus the privity inquiry "centers on the closeness of the relationship in question." *Weinberger v. Tucker*, 510 F.3d 486, 492 (4th Cir. 2007). Notably, courts throughout this Circuit recognize that a parent company and its subsidiary are in privity for purposes of claim preclusion. *Whitehead v. Viacom*, 233 F. Supp. 2d 715, 721 (D. Md. 2002) *aff'd sub nom. Whitehead v. Viacom, Inc.*, 63 F. App'x 175 (4th Cir. 2003) (holding that the relationship of parent and subsidiary is sufficient to establish privity between parties for purposes of res judicata); *Saudi v. Ship Switzerland*, S.A., 93 F. App'x 516, 520-21 (4th Cir. 2004); *Barrett v. PAE, Inc.*, No. 121CV00107RDAJFA, 2022 WL 479097, at *7 (E.D. Va. Feb. 16, 2022), *aff'd*, No. 22-1305, 2022

WL 17984482 (4th Cir. Dec. 29, 2022); *Gravelle v. Kaba Ilco Corp.*, No. 5:13-CV-642-FL, 2014 WL 1513138, at *3 (E.D.N.C. Apr. 16, 2014); *Finn v. Swisher Int'l, Inc.*, No. 3:04 CV 484, 2007 WL 1959260, at *5 (W.D.N.C. July 5, 2007). As disclosed in Piedmont's Rule 7.1 Corporate Disclosure Statement, American Airlines Group is Piedmont's parent company. (Doc. 2). Accordingly, Piedmont is in privity with American Airlines Group for purposes of res judicata, and therefore element three is met.

### iii. There Is A Final Judgment On The Merits In *Warren I*.

There is a final judgment on the merits in *Warren I*. Federal Rule of Civil Procedure 41(b) is the controlling authority on whether a judgment operates as a final judgment on the merits. It provides that "[u]nless the dismissal order states otherwise," an involuntary dismissal "except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). This Court granted American Airlines Group Motions to Dismiss and entered judgment against Plaintiff Chari Warren on October 19, 2022. Exhibits 1 and 2. Specifically, in the Memorandum and Recommendation in *Warren I*, which was later adopted, this Court wrote that it recommended that "Defendant AAG's Motion to Dismiss be granted and the Complaint Dismissed with prejudice.' Exhibit 1 at p. 8. Thus, it appears, like the court in *Loya*, this Court intended to dismiss the entire complaint with prejudice and for this dismissal to be final adjudication on the merits on all claims. The Memorandum and Recommendation goes on to address each claim against American Airlines Group separately. Significantly, all common law tort claims against American Airlines Group were dismissed pursuant to Rule 12(b)(6) *with prejudice*. *Id* at pp. 9-12. Accordingly, there is no questions that *res judicata* bars Plaintiff's common law tort claims brought in this action.

While in *Warren I* American Airlines Group sought dismissal of the Title VII claim for both lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim

upon which relief can be granted pursuant to Rule 12(b)(6), this Court only expressly addressed dismissal of Plaintiff's Title VII claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Exhibit 1 at p. 8. Since a dismissal for lack of jurisdiction does not operate as an adjudication on the merits under Rule 41(b), this Court in *Warren I* dismissed the Title VII claims without prejudice. Even though the Title VII claims in *Warren I* were dismissed without prejudice, *res judicata* is still applicable to Plaintiff's Title VII claims here.

In *Loya v. Wexford Health Sources, Inc.*, the United States District Court of Maryland, a sister court in this Circuit, recently held that the court's prior dismissal of the plaintiff's deliberate indifference claim with prejudice and plaintiff's medical negligence claim for lack for lack of subject matter jurisdiction without prejudice nonetheless resulted in a decision "on the merits" for *res judicata* purposes because the plaintiff did not seek to amend the suit, nor did he appeal the judgment. No. CV ELH-20-1946, 2020 WL 5877266, at *7 (D. Md. Oct. 2, 2020). Notably, in holding that *res judicata* applied even though part of the prior judgment with without prejudice, the District Court of Maryland reasoned that "res judicata extends to claims that could have been asserted and litigated in the original suit," which included the claim dismissed without prejudice. *Id.* The court further noted that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Id.* And, "allowing plaintiff's claims to proceed would sanction piecemeal litigation, which is precisely what res judicata prohibits." *Id.* (*citing Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013).

Just like in *Loya*, this Court in *Warren I* dismissed Plaintiff's Title VII claims for lack of subject matter jurisdiction without prejudice and Plaintiff did not appeal which tends to indicate a

final adjudication on the merits.[6] Finally, allowing Plaintiff to bring the same Title VII claim based on the same core operative facts as in *Warren I* is inconsistent with the aims of *res judicata*. It is exactly what *res judicata* aims to prevent. Accordingly, this Court's dismissal of Plaintiff's Title VII claim in *Warren I* should be found to be a final judgment on the merits.[7]

Thus, this entire action is barred by the doctrine of *res judicata* (claim preclusion) and should be dismissed.

### C. Plaintiff's Title VII Should be Dismissed Pursuant to Rule 12(b)(6) for Failure to Exhaust Administrative Remedies.

Plaintiff's Title VII claims fail for the sole reason of Plaintiff's failure to exhaust required, pre-suit procedural administrative remedies. Before filing a lawsuit alleging employment discrimination under Title VII, a plaintiff must exhaust administrative remedies before the U.S. Equal Employment Opportunity Commission ("EEOC"). *See Underdue v. Wells Fargo Bank, N.A.*, No. 3:14cv183, 2016 WL 3452492, at *2 (W.D.N.C. June 6, 2016) (noting the requirement that a plaintiff must first exhaust administrative remedies before filing a Title VII lawsuit). Specifically, in a non-deferral state like North Carolina with limited exceptions, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory employment action. *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 543 (E.D.N.C. 2008). Title VII's charge-filing requirement is "mandatory" in the sense that the court must enforce the rule if it is properly raised. *Fort Bend Cnty., Texas v. Davis*, 204 L. Ed. 2d 116, 139 S. Ct. 1843, 1851 (2019).

---

[6] While Plaintiff sought to amend her Complaint in *Warren I*, those efforts were denied. (Civil Action No. 3:22-CV-00062-RJC-DSC, Docs. 18 and 21).

[7] Even if the Court declines to find that Plaintiff's Title VII claim in this current action is barred by res judicata, Plaintiff's Title VII claim in this action is subject to dismissal on independent grounds as set forth in Section I(C), *infra*.

In *Fort Bend Cty., Texas v. Davis*, the Supreme Court recently held that the charge-filing exhaustion requirement is a mandatory processing rule that may subject a plaintiff's claims to dismissal. 139 S. Ct. 1843, 1851 (2019). In the time since *Fort Bend County* was decided, courts in this Circuit have repeatedly held that a plaintiff's failure to exhaust administrative remedies applicable to discrimination claims warrants dismissal of those claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Gorrasi v. Azar,* No. 21-2191, 2022 WL 6901173, at *2 (4th Cir. Oct. 12, 2022) (holding that the district court correctly found that the plaintiff did not exhaust her administrative remedies for the reassignment claim)*; Gill v. Coca-Cola Bottling Co. Consol.*, 3:18-CV-681-MOC-DSC, 2019 WL 4439496, at *3 (W.D.N.C. Sept. 16, 2019) (dismissing the discrimination claims plaintiff failed to raise in his EEOC Charge under Rule 12(b)(6) for failure to exhaust administrative remedies); *McCaskey v. U.S.P.S.*, 2021 WL 1537793 (W.D.N.C. Mar. 26, 2021) (dismissal of ADA claim warranted under Rule 12(b)(6) for failure to exhaust administrative remedies at the EEOC).

In this case, Plaintiff's Complaint does not allege she filed a charge of discrimination with the EEOC against Piedmont (or any entity), nor does her Complaint include any exhibits or appendices indicating that a charge was ever commenced or that the EEOC issued a Notice of Right to Sue. *See Wallace v. Bd. of Educ. of Calvert County,* CV PX 16-3242, 2017 WL 2361161, at *5 (D. Md. May 31, 2017) ("Even if Plaintiff had exhausted her administrative remedies, she has not pleaded any facts in the instant complaint to sustain this claim."). This omission is fatal to Plaintiff's claims under Title VII and, as a result, Plaintiff's claims of sexual harassment and sex discrimination in violation of Title VII (Counts I) should be dismissed for failure to state a claim

upon which relief can be granted under Rule 12(b)(6).[8]

**D.      Plaintiff's Complaint Fails To State Any Claim For Negligent Infliction Of Emotional Distress Or Assault Upon Which Relief Can Be Granted Against Piedmont Under A Theory Of *Respondeat Superior*.**

Plaintiff's claims for negligent infliction of emotional distress and assault against Piedmont, like her Title VII claims, stem from the allegation that Roberts sexually assaulted her by kissing her left cheek while at work and the corporate defendant's response to the same. Plaintiff's Complaint attempts to impose liability on Piedmont for Roberts' conduct under a theory of *respondent superior*. (Doc. 1-2, p. 6, "Nature of the Complaint"). "An *employer* is liable under *respondeat superior* where: '(1) the *employer* expressly authorizes the *employee's* act; (2) the tort is committed by the *employee* in the scope of employment and in furtherance of the employer's business; or (3) the *employer* ratifies the *employee's* tortious conduct.'" *Cummings v. Lumbee Tribe of N. Carolina*, 590 F. Supp. 2d 769, 775 (E.D.N.C. 2008) (*quoting Denning–Boyles v. WCES, Inc.*, 123 N.C. App. 409, 414, 473 S.E.2d 38 (N.C. App. Ct. 1996)) (emphasis added); *see also Brown v. Burlington Indus., Inc.*, 93 N.C. App. 431, 436, 378 S.E.2d 232, 235 (1989) (*quoting Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 340 S.E.2d 116, *disc. rev. denied*, 317 N.C. 334, 346 S.E.2d 140 (1986)); *Graham v. Hardee's Food Systems, Inc*., 465 S.E.2d 558 (N.C. Ct. App. 1996).

---

[8] And, because the period within which Plaintiff had to file an EEOC charge has long expired, the Court's dismissal should be with prejudice. *See Odom v. Brookfield Renewable*, 1:20-CV-00101-MR-WCM, 2021 WL 1015857, at *4 (W.D.N.C. Feb. 11, 2021) (dismissing plaintiff's claims with prejudice where all the conduct plaintiff alleged to have occurred took place well in advance of the 180-day deadline to file a charge of discrimination with the EEOC). Plaintiff's Complaint identifies a single incident that occurred on June 3, 2019, and the surrounding circumstances, in support of her Title VII claims. (Doc. 1-2, pp. 9 ¶ 16 – 23 ¶ 33). 180 days from this incident was November 30, 2019. Even assuming Plaintiff's Title VII claims are based on alleged conduct in the aftermath of this incident, including Roberts allegedly telling coworkers about the incident for example, a charge filed now – over two and half years later – would be untimely.

This theory fails based on one significant fact: Piedmont did not employ Roberts, the alleged harasser and tortfeasor. Roberts was not an employee of Piedmont at any relevant time as the face of the Complaint clearly established. Plaintiff's Complaint repeatedly alleges that Roberts was an employee for PSA Airlines, Inc. (Doc. 1-2, pp. 6, 7 ¶ 4, 10 ¶ 23, 11 ¶ 29, 12 ¶ 38, 14 ¶ 46, 15 ¶ 51, 16 ¶ 57).[9] The Complaint is void of any allegations that Piedmont employed Roberts. The lack of an employer/employee relationship between Piedmont and Roberts is fatal to Plaintiff's remaining claims premised on a theory of *respondeat superior.*

Even setting aside this dispositive issue, there are no allegations that Piedmont (or any entity) authorized Roberts' alleged kiss (which Plaintiff characterizes as an "assault"), that the alleged kiss was within the course and scope of Roberts' duties as an airline pilot or in furtherance of Piedmont, who is not his employer, (or any entity's) business, or that Piedmont somehow ratified Roberts' conduct – or that similar misconduct by Roberts was ever brought to Piedmont's attention prior to the June 3, 2019 incident. Moreover, there are no factual allegations to support a plausible finding that Piedmont did (or did not) take any action in this case. Consequently, Plaintiff's tort claims, specifically her NIED and assault claims, cannot be imputed to Piedmont under a *respondeat superior* theory and should be dismissed pursuant to Rule 12(b)(6).

**E.      Plaintiff's Claim For Negligent Infliction Of Emotional Distress Fails As A Matter Of Law And Should Be Dismissed.**

There are several additional and alternative reasons why Plaintiff's tort claims of negligent infliction of emotional distress ("NIED") and assault should be dismissed. Each is addressed in turn herein.

---

[9] There is one allegation in the Complaint that Roberts "is an airline pilot working for American Airlines Group." (Doc. 1-2, p. 7). Even taking this allegations as true, Plaintiff's Complaint still includes no allegations that Robert's was ever employed by Piedmont.

To state a claim for NIED, a plaintiff must show that: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Guthrie*, 152 N.C. App. at 25 (*quoting Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)).

Here, Plaintiff's Complaint attempts to cast alleged intentional and discriminatory conduct as negligence to support her NIED claim. This is not sufficient as a matter of law to state a NIED claim. First, Plaintiff's NEID claim is based on the same intentional actions for which she bases her unsuccessful Title VII claim – her "alleged sexual assault" by Roberts and the alleged mishandling of her report regarding the same. This is not sufficient and subjects her NIED claim to dismissal. The law is clear that "[w]hen the plaintiff's complaint alleges acts of discrimination that are intentional in nature, and simply concludes that the acts were committed negligently, it is insufficient to state a claim for negligent infliction of emotional distress." *Barbier v. Durham Cnty. Bd. of Educ.*, 225 F. Supp. 2d 617, 631 (M.D.N.C. 2002) (*citing Mitchell v. Lydall, Inc.*, 16 F.3d 410, No. 93-1374, 1994 WL 38703, at *3 (4th Cir. Feb. 10, 1994)); *see also Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 637 (M.D.N.C. 2000)*, (dismissing claim for NIED because plaintiff had only alleged discriminatory conduct, which is "inherently intentional" conduct); *Sheaffer v. Cnty. of Chatham*, 337 F. Supp. 2d 709, 734 (M.D.N.C. 2004) (dismissing plaintiff's claim of NIED because plaintiff had only alleged intentional conduct on the part of the defendants); *Zampogna v. Gaston Cnty. Schools Bd. of Educ.*, No. 3:07CV174, 2007 WL 4570869, at *4 (W.D.N.C. Dec. 26, 2007) ("A [NIED] claim must fail where plaintiff alleges discriminatory conduct-as it is inherently intentional, not negligent, conduct.") (internal citations omitted). Second, "basing a claim upon intentional conduct and simply labeling it as negligent is untenable as an attempt to state a cause

of action for negligence." *Barrow v. Branch Banking & Tr. Co.*, No. 3:16-CV-675-RJC-DCK, 2017 WL 3222660, at *6 (W.D.N.C. July 7, 2017) (internal citations omitted). This is exactly what Plaintiff does here. As such, her NIED claim fails and should be dismissed.

Additionally, Plaintiff cannot demonstrate that Piedmont (or any entity) could foresee its alleged negligence would cause severe emotional distress, which is element two in the analysis. For example, a sister court held that even upon allegations that an employer negligently supervised employees and failed to respond to a plaintiff's complaint of retaliation, such allegations were "insufficient for the court to leap to the conclusion that it was reasonably foreseeable to defendants that the conduct would cause her severe distress." *Cherry v. Perdue Farms, Inc.*, 2:10-cv-23-FL, 2010 WL 5437222, *6 (E.D.N.C. Dec. 27, 2010) (*citing Bratcher*, 545 F. Supp. 2d 533, 546). In that case, the Eastern District of North Carolina granted defendant's motion to dismiss, noting further that "a few conclusory allegations of negligence are insufficient to allow a claim for NIED to proceed in the wake of a number of well-pleaded factual allegations of intentional conduct." *Id*. The same result should follow here.

Finally, even if Plaintiff alleged distinct, negligent conduct, an NIED claim based upon the alleged mishandling of an internal report is barred by the North Carolina Workers' Compensation Act. *See Shaw v. Goodyear Tire & Rubber Co.*, 737 S.E.2d 168, 178 (N.C. Ct. App. 2013) ("[P]laintiff's NIED claim caused by defendant's mishandling of her [internal sexual harassment] complaint would fall within the purview of the Industrial Commission as her emotional distress is an 'injury' recognized by the Workers Compensation Act."). Therefore, and for a host of reasons, Plaintiff's NIED claim (Count III) fails and should be dismissed pursuant to Rule 12(b)(6).

**F.** **Plaintiff's Claims For Negligent Retention And Supervision Fail As A Matter Of Law And Should Be Dismissed.**

North Carolina law recognizes a cause of action *against an employer* for negligence in retaining or supervising an employee whose wrongful conduct injures another. *See Hogan*, 79 N.C.App. at 494–95. Unlike the theory of *respondeat superior* which imposes liability on an employer for the negligence of its employees acting in the course and scope of their employment, the theory of negligent retention and supervision is a direct theory of negligence against the employer and is important in cases where the employee's acts were not within the scope of his or her employment. *Turner v. U.S.A. Logistics, Inc.*, No. 3:14-CV-289-DCK, 2016 WL 3607162, at *4 (W.D.N.C. July 1, 2016) (citing Hogan, 340 S.E.2d at 124). In such a case, this theory allows a plaintiff to establish liability on the part of *the employer* where no liability would otherwise exist. *Id.* Thus, is it is generally an alternative to *respondeat superior* liability. *Id.* Claims of negligent retention and supervision are grounded in the active negligence of the alleged tortfeasor's *employer* and brought against the *employer* of the tortfeasor. *Marshall v. C & S Rail Servs., LLC*, No. 1:19CV986, 2021 WL 1341801, at *10 (M.D.N.C. Apr. 9, 2021). Accordingly, here such claims are only available against Roberts' employer, *which is not Piedmont*. As the allegations make clear, Roberts was an employee of PSA Airlines, Inc. which, as alleged in the Complaint is its own company. (*See* Doc. 1-2, pp. 6, 7 ¶ 4, 10 ¶ 23, 11 ¶ 29, 12 ¶ 38, 14 ¶ 46, 15 ¶ 51, 16 ¶ 57). The fact that Piedmont is not Roberts' employer along warrants immediate dismissal of Plaintiff's negligent retention and supervision claims against Piedmont.

Moreover, Plaintiff's negligent retention and supervision claim must be dismissed for lack of an underlying tort attributable to Piedmont. In order to state a claim for negligent supervision and retention against an employer under North Carolina law, a plaintiff "must prove that the incompetent employee committed a tortious act resulting in injury to [the] plaintiff and that prior

to the act, the employer knew or had reason to know of the employee's incompetency." *Jackson v. FKI Logistex*, 608 F. Supp. 2d 705, 707 (E.D.N.C. 2009) (*quoting Smith v. Privette*, 128 N.C.App. 490, 494–95, 495 S.E.2d 395, 398 (1998)). "Where a plaintiff fails to show that an employee of the defendant-employer committed a common law tort recognized in North Carolina, a negligent supervision claim fails as a matter of law." *Barrow*, 2017 WL 3222660 at *8. As set forth above and below, Plaintiff's NEID and assault claims fails and should be dismissed, and are thus unavailable as support for the negligent supervision and retention claims. Additionally, Plaintiff's Title VII claim cannot support a negligent supervision or negligent retention claim against Piedmont. This Circuit has interpreted North Carolina law to not permit a negligent supervision claim arising from an alleged Title VII violation because such a violation was not a common-law tort. *Id.*; *Jackson*, 608 F. Supp. 2d at 708.

Thus, Plaintiff's negligent retention and supervision claims (Count II) fail and should be dismissed pursuant to Rule 12(b)(6).

## II. PLAINTIFF'S LAWSUIT SHOULD BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS PURSUANT TO RULES 12(B)(4), 12(B)(5) AND 12(B)(2) FOR INSUFFICIENCY OF PROCESS AND SERVICE OF PROCESS AND RESULTING LACK OF PERSONAL JURISDICTION.

In additional to the array of substantive defects and issues with this action, Plaintiff's Complaint is subject to dismissal due to fatal procedural errors.

### A. Rules 12(B)(4), 12(B)(5), And 12(B)(2): Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(4) challenges the sufficiency of process, while Rule 12(b)(5) motions challenge the sufficiency of service of process." *Richardson v. Roberts*, 355 F. Supp. 3d 367, 370 (E.D.N.C. 2019). The plaintiff bears the burden of establishing proper service. *Dalenko v. Stephens*, 917 F. Supp. 2d 535, 542 (E.D.N.C. 2013); *see also Mylan Labs., Inc. v. Akzo*, N.V., 2 F.3d 56, 60 (4th Cir. 1993) (holding that the

plaintiff must prove service of process, if challenged). "Where a motion to dismiss is filed based on insufficient process or insufficient service of process, affidavits and other materials outside the pleadings may be properly submitted and considered." *Lackey v. Cty. of Macon*, No. 2:09CV42, 2009 WL 2462186, at *2 (W.D.N.C. Aug. 7, 2009); *U.S. ex rel. Metromont Corp. v. S.J. Constr., Inc.*, No. 1:09CV745, 2010 WL 2793919, at *2 (M.D.N.C. July 15, 2010).

Rule 12(b)(2) of the Federal Rules of Civil Procedure "provides for dismissal where the court lacks personal jurisdiction over a particular named defendant." *Protocol, LLC v. Henderson*, 18 F. Supp. 3d 689, 694 (M.D.N.C. 2014). "The court lacks personal jurisdiction over a defendant that has not been served properly." *Hammonds v. Dep't of Transportation of Div. of Motor Vehicles*, 2019 WL 5957178, at *1 (E.D.N.C. Nov. 12, 2019) (*citing Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)). When a defendant properly challenges the court's personal jurisdiction through a Rule 12(b)(2) motion, "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

## B. Plaintiff's Process And Service Of Process On Piedmont Are Insufficient, Thus Preventing The Court From Obtaining Personal Jurisdiction Over Piedmont.

This Court can exercise jurisdiction over a defendant only if there is valid service of process on the defendant. *Shaver v. Cooleemee Volunteer Fire Dep't*, No. 1:07CV00175, 2008 WL 942560, at *1 (M.D.N.C. Apr. 7, 2008). Under North Carolina law, which governs service in this action,[10] "service of process statutes [must] be strictly construed and followed, and a plaintiff who

_____

[10] *See* Fed. R. Civ. P. 4(h)(1)(A) (incorporating standards under Fed. R. Civ. P. 4(e)(1), which requires service pursuant to applicable state law); *see also Davis v. Tyson Foods, Inc.*, 2015 U.S. Dist. LEXIS 101873, at *3 (W.D.N.C. Aug. 4, 2015) ("When service of process is attempted before

fails to comply with them, even where actual notice occurs, does not properly serve the defendant." *Id.* at *2 (*citing Stack v. Union Reg'l Mem'l Med. Ctr., Inc.*, 171 N.C. App. 322, 328, 614 S.E.2d 378, 382 (2005)). "The filing of a lawsuit is a serious event, irrespective of its merits," and "[s]ervice of process is not freestyle, and courts are directed not to overlook procedural deficiencies just because actual notice occurred." *Id.*; *see also Hoyle v. United Auto Workers Local Union 5285*, 444 F. Supp. 2d 467, 474 (W.D.N.C. 2006) (requiring "strict compliance with the service of process statutes, even where it is clear . . . that a defendant has received actual notice of the action."). "Absent valid service of process, a court does not acquire personal jurisdiction over the defendant and the action must be dismissed." *Shaver*, 2008 WL 942560, at *2 (*quoting Thomas & Howard Co. v. Trimark Catastrophe Serv. Inc.*, 564 S.E.2d 569, 572 (N.C. App. 2002)).

Piedmont is a foreign corporation. North Carolina law requires service on a foreign corporation "by mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the officer, director or agent" of the corporation to be served. N.C. R. Civ. P. 4(j)(6). Plaintiff's only attempted service on Piedmont was to mail it a copy of Plaintiff's "Amendment to the Complaint" and a Summons issued to "The Estate of Timothy Jay Roberts" related to a civil action pending in the General Court of Justice, District Court Division, for Mecklenburg County, North Carolina, designated as File No. 22-CVD-19330. (Doc. 1-1). To date, Piedmont, a foreign corporation, has never been served with a valid Summons and the complete Complaint setting forth the allegations against it. Failure to serve the complete Complaint on Piedmont is an obvious service defect. *Cherry v. Spence*, 249 F.R.D. 226, 229 (E.D.N.C. 2008) ("service of a partial complaint is insufficient").

---

removal to federal court, the state's service of process rules govern whether the attempt was sufficient.").

No officer, director, or managing agent, or registered agent of Piedmont, a foreign corporation, have received a copy of the Complaint and a Summons properly directed to Piedmont. And, Piedmont has certainly not been served with a copy of the summons and complaint in any manner authorized under Rule 4(j)(6) of the North Carolina Rules of Civil Procedure. *See* N.C. Gen. Stat. § 1A-1, Rule 4(j)(6) (2022).

What is more, the only summons in the state court file that Piedmont's undersigned counsel pulled, which has not been served on Piedmont, is invalid. The summons does not name any of Piedmont's officers, directors, or other managing agents as required under Rule 4(j) of the North Carolina Rules of Civil Procedure. Rather, the summons is simply addressed to "Piedmont Airlines." (Doc. 1-2 p. 3). *See e.g. Anderson v. Waste Management of Wilmington*, No. 7:15-CV-14-FL, 2016 WL 1183114, at *5 (E.D.N.C. Mar. 28, 2016) ("plaintiff's attempted service still fails, where he failed to address the summons to any of defendant officers, directors, or managing or general agents"); *Benitez v. Maxim Healthcare Servs.*, No. 1:12-CV-1195, 2013 WL 3441734, at *2-3 (M.D.N.C. Jul. 9, 2013) (the process issued and the service of process on Defendant was insufficient because the summons was not directed or addressed to an officer, director, or agent of Defendant as required by the North Carolina and Federal Rules).

Consequently, dismissal of Piedmont is appropriate pursuant to Rules 12(b)(4) and (5) for insufficient process and insufficient service of process, and thus, also Rule 12(b)(2) for lack of personal jurisdiction. *Hammonds*, 2019 WL 5957178, at *1.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

Dated this the 15th day of February, 2023.

Respectfully submitted,

/s/Meredith F. Hamilton
Kelly S. Hughes, NC #33439
Meredith F. Hamilton, NC #50703
*Attorneys for Defendant Piedmont Airlines, Inc.*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC  28244
Telephone:  704-342-2588
Facsimile:  704-342-4379
Email:  kelly.hughes@ogletree.com
            meredith.hamilton@ogletree.com

## CERTIFICATE OF SERVICE

I, Meredith F. Hamilton, hereby certify that I have this day electronically filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT PIEDMONT AIRLINES, INC.'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notice of the same to the following individuals:

Amanda Price
*Attorney for Plaintiff*
Maxwell and Price, LLP
101 N. Tryon Street
Charlotte, NC 28246
Telephone: (704) 444-0537
Email: amanda@mapllp.com

Dated this the 15th day of February, 2023.

/s/Meredith F. Hamilton
Meredith F. Hamilton, NC #50703
*Attorney for Defendant Piedmont Airlines, Inc.*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28244
Telephone: 704-342-2588
Facsimile: 704-342-4379
Email: meredith.hamilton@ogletree.com